IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSIE E. R.,[1]

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Civ. No. 1:17-cv-01918-AA

OPINION & ORDER

AIKEN, District Judge:

Plaintiff Jessie Emily R. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

Plaintiff filed a Title XVI application for supplemental security income ("SSI") on March 7, 2014, alleging lifelong disability beginning May 31, 1988, her date of birth. Tr. 15. The application was denied initially and on reconsideration and a hearing was held by video conference at Plaintiff's request on February 24, 2017. *Id.* On April 4, 2017, the ALJ issued a decision finding Plaintiff not disabled. Tr. 25. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, March 7, 2014. Tr. 17. The ALJ

determined Plaintiff had the following severe impairments: epilepsy and borderline intellectual functioning. *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 17-19.

The ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can have no exposure to workplace hazards, such as unprotected heights and exposed moving machinery; and she can perform simple, routine tasks requiring a reasoning level of 1 or 2. Tr. 19.

The ALJ noted Plaintiff was 25 years old on her application date and has at least a high school education and is able to communicate in English. Tr. 23. The ALJ found Plaintiff had no past relevant work. *Id.* Based on her RFC, the ALJ determined Plaintiff was able to perform work as a scrap sorter, box maker, and bagger. Tr. 24. As a consequence, the ALJ determined Plaintiff was not disabled. Tr. 24-25.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) failing to fully and fairly develop the record; (2) failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony; (3) improperly rejecting the opinion of Plaintiff's treating therapist; and (4) improperly rejecting lay witness testimony.

### I. Duty to Develop the Record

Plaintiff asserts that the record in this case is inadequate to determine the nature and severity of Plaintiff's mental limitations. The ALJ in a social security case has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). This duty extends to the represented as well as to the unrepresented claimant. *Id.* Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Id.*; *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998). The ALJ may discharge this duty in several ways, including subpoenaing the claimant's physicians; submitting questions to the claimant's physicians; continuing the hearing;

or keeping the record open after the hearing to allow supplementation of the record. *Smolen*, 80 F.3d at 1288.

In this case, Plaintiff argues that there are assessments and evidence in the record consistent with a diagnosis of autism spectrum disorder and that the ALJ should have left the record open for further testing and evaluation.

As previously noted, the ALJ found that Plaintiff's epilepsy and borderline intellectual functioning constituted severe impairments at Step Two of the sequential analysis. Tr. 17. The ALJ also noted that Plaintiff had been assessed with depression and anxiety, but that the assessment had not been made by an acceptable medical source and that there was no indication of a diagnosis from such a source. *Id.* The ALJ does not mention autism spectrum disorder in the Step Two discussion, although Plaintiff points to several instances in the record where treatment providers discuss the possibility of an autism diagnosis.

On January 5, 2015, Plaintiff was referred to Klamath Basin Behavioral Health where she was assessed by Darlene Breazeal, LMFT, MS, QMHP. Tr. 369. This was the first time Plaintiff had ever sought out mental health treatment. *Id.* Ms. Breazeal noted: "My clinical impression is that while [Plaintiff] does have some ADHD components, she meets more criteria for autism, but this is a dx that will need further assessment by a psychiatric LMP. Until she can be further assessed, I will assign a conservative dx of ADHD." *Id.* Plaintiff indicated her desire to be in therapy and to meet with a psychiatrist to see if she met the criteria for autism. *Id.* Ms. Breazeal included autism spectrum disorder as a "rule-out" diagnosis for Plaintiff.[2] Tr. 370.

---

[2] "A 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is evidence that the criteria for a diagnosis *may* be met, but more information is needed in order to rule it out." *Karie K. v. Comm'r*, Case No. 6:17-cv-01024-AA, 2018 WL 3613993, at *4 (D. Or. July 27, 2018) (emphasis in original) (quotation marks and citation omitted).

Page 5 – OPINION & ORDER

Plaintiff was treated by several different providers at Klamath Basin Behavioral Health, including Stacy Sherwood, NP, PMHNP, QMHP. Tr. 390 (August 13, 2015), 395 (October 5, 2015), 402 (November 5, 2015), 410 (February 4, 2016). On March 30, 2016, Plaintiff was treated by Elaine Dinwiddie MA, QMHP. Tr. 413. During that assessment, Ms. Dinwiddie included autism spectrum disorder among Plaintiff's list of "Clinical Disorder and Other Conditions that May Be a Focus of Clinical Attention." Tr. 414. The form fields for the diagnosing provider and the date of diagnosis were left blank. Tr. 416. There is no indication of a formal diagnosis by an acceptable medical source. Autism spectrum disorder thereafter began to appear in Plaintiff's list of diagnoses at Klamath Basin Behavioral Health. *See, e.g.*, Tr. 416 (March 30, 3016, treatment note by Ms. Dinwiddie), 418 (April 6, 2016 treatment note by Anna Budden CADC, LPC, MA, NCC, QMHP), 420 (April 21, 2016, treatment note by Ms. Budden), 422 (April 26, 2016, treatment note by Ms. Dinwiddie). On April 29, 2016, Plaintiff was once again treated by Ms. Sherwood, who similarly included autism spectrum disorder among Plaintiff's current diagnoses.[3] Tr. 424.

Plaintiff was referred to Michael R. Villanueva, Psy. D., for a consultative examination on August 26, 2014, as part of the disability application process. Tr. 344-47. Dr. Villanueva assessed Plaintiff with a borderline intellect and a history of seizure disorder, but concluded that "it does not appear that she has a significant intellectual disability." Tr. 346-47. Dr. Villanueva noted that Plaintiff participated in special education programs and reported specific learning difficulties, but Dr. Villanueva's evaluation did not include an assessment for learning disabilities. Tr. 346. Dr. Villanueva's assessment, which predates Plaintiff's treatment at Klamath Basin Behavioral Health, does not mention autism spectrum disorder and it does not appear that Dr. Villanueva assessed

---

[3] The parties agree that, although Ms. Sherwood would now qualify as an acceptable medical source, she was considered an "other" medical source under the then-operative regulations and must be treated as such for purposes of this challenge.

Plaintiff for autism. *See* Tr. 344 ("The specific points to be covered in this examination include: learning disability, depression, ADHS, seizure disorder. I was asked to ask the claimant specifically regarding the history of seizure disorder.").

The only diagnosis of autism spectrum disorder was made by the treatment providers at Klamath Basin Behavioral Health, none of whom qualified as an acceptable medical source under the regulations at the time. Plaintiff contends that this diagnosis, combined with evidence in the record suggesting difficulty in social situations and potentially some type of learning disorder, *see* Tr. 344-46, created an inadequacy or ambiguity in the record sufficient to trigger the ALJ's duty to further develop the record. Plaintiff argues that, had the record been further developed, it might have revealed evidence of additional limitations to Plaintiff's RFC.

The Court agrees. There is certainly evidence suggesting that Plaintiff experienced difficulty with social functioning, which her treatment providers consistently attributed at least in part to autism spectrum disorder. The only consultative examination by an acceptable medical source predated those treatment records and did not mention or discuss autism as a possible limitation. Given the consistency with which Plaintiff's mental health providers included a diagnosis of autism spectrum disorder, the Court concludes that the ALJ's duty to conduct an appropriate inquiry was triggered. Had the record been further developed, it might have revealed evidence of additional limitations to Plaintiff's RFC. Accordingly, the Court cannot conclude that the error was harmless.

## II. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce

objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Id.*

In this case, Plaintiff testified that she did not believe she would be able to sustain a normal work week because she would have trouble dealing with demands from supervisors and the public. Tr. 49. Plaintiff also testified that her ADHD caused her to be forgetful or have difficulty focusing, even when taking her medication. Tr. 51-52. Plaintiff has trouble communicating clearly, although this issue has improved with treatment. Tr. 52. Plaintiff experiences panic in stressful situations, especially when dealing with unfamiliar people. Tr. 53-54. Plaintiff testified that when she felt panicked or stressed, she would "shut down" and be unable to move or think, although this has also improved with treatment. Tr. 54. Plaintiff testified that she volunteers at a gospel mission for one hour per day, five days per week. Tr. 45. As part of her volunteer work she serves food and "help[s] around with the tables after everyone's left." *Id.* Plaintiff testified that it took some time for her to get comfortable working at the mission and she still gets nervous when the mission is especially crowded. Tr. 46.

The ALJ identified several reasons for discounting Plaintiff's subjective symptom testimony. First, the ALJ identified internal inconsistencies. Tr. 20. Plaintiff's "allegations of being nervous in new locations is inconsistent with her testimony and other statements of record indicating that she wanted to explore new places." *Id.*; *see also* Tr. 46 ("[W]hen I'm in a new location I get nervous. It takes a while for me to get comfortable to the new location."); Tr. 48 (Plaintiff testified that was waiting for disability because she wanted to "explore the world" and that she had been "stuck in one place for so long" that she had "cabin fever."). The ALJ concluded that such inconsistent statements "undermine the claimant's allegations regarding the intensity, persistency, and limiting effects of her nervousness and ability to adapt to new places." Tr. 20. On this record, the Court concludes that the ALJ reasonably considered Plaintiff's inconsistent statements.

Additionally, the ALJ noted that Plaintiff testified that she would have difficulty doing full-time work like her volunteer work because of "pushy people." Tr. 20, 48-49. Plaintiff testified that she thought she might be able to do some sort of office work, however. Tr. 49. The ALJ noted that "[s]uch statements indicate the claimant believes she is capable of working and further suggest that the claimant's symptoms and conditions may not be as limiting as alleged." Tr. 20. Likewise, Plaintiff told her treatment providers that she has never applied for a job because "she's heard that it's not a good work environment at places like MacDonalds, Walmart, and Gamestop." Tr. 369. The ALJ concluded:

> While this may or may not be true, this is not a basis for disability. Moreover, on numerous occasions, claimant indicated she was seeking disability so she could move out on her own and explore the world. However, the undersigned again notes that financial need or a desire to explore the world is not a basis for disability. Overall, such statements undermine the claimant's allegations regarding the intensity, persistency, and limiting effects of her physical and mental health symptoms.

Tr. 21.

Evidence of self-limitation or lack of motivation is a valid consideration when assessing a claimant's subjective symptom testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001). On this record, the Court cannot conclude that the ALJ erred in considering Plaintiff's stated reasons for not working.

The ALJ also considered Plaintiff's daily activities. Consideration of daily activities is proper when they indicate activity or skills that are transferable to the workplace, or when the activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ noted that Plaintiff prepared meals, did laundry, performed household chores, walked, exercised, used public transportation, attended to the shopping, cared for pets, and socialized with others. Tr. 22. She created art, wrote, watched television, played video games, and did volunteer work at a local mission. *Id.*; Tr. 177-78. The ALJ reasonably concluded that these activities undermined Plaintiff's claims about the intensity, persistency, and limiting effects of her physical and mental symptoms. Tr. 22.

On this record, the Court concludes that the ALJ gave sufficient clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

### III. Medical Opinion Evidence

Plaintiff argues that the ALJ erred by failing to consider the "other" medical source opinion of Plaintiff's treating therapist, Elaine Dinwiddie. An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout*, 454 F.3d at 1053. To discount "other" source testimony, the ALJ must provide reasons that are germane to each witness. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

In this case, Ms. Dinwiddie has been Plaintiff's treating therapist since November 2015. Tr. 498. Ms. Dinwiddie reported that Plaintiff "finds interacting and communicating with others difficult," and "completing complex or detailed tasks would be difficult." *Id.* Ms. Dinwiddie opined that "sustained attention and concentration are limited." *Id.* Ms. Dinwiddie affirmed that Plaintiff's treatment involved learning communication skills, distress tolerance, and emotional regulation. *Id.* With respect to an onset date, Ms. Dinwiddie reported that Plaintiff's limitations started in childhood. *Id.*

The ALJ gave partial weight to Ms. Dinwiddie's opinion, noting that Ms. Dinwiddie's conclusions concerning limitations in attention and concentration, and difficulty with complex or detailed tasks were consistent with the record. Tr. 22. The ALJ rejected Ms. Dinwiddie's opinion that Plaintiff would have difficulty communicating with others as inconsistent with the record and a reiteration of Plaintiff's subjective reports. *Id.* "While [Plaintiff] had some communication difficulty with her stepfather, she had good rapport with treatment providers, actively engaged in group therapy, interacted with friends, and sustained ongoing volunteer work at the local mission." *Id.*

The ALJ's findings are supported by substantial evidence in the record. In her Function Report, Plaintiff reported that she will "hang out," talk, and go out for lunch with others on a weekly basis. Tr. 178. She denied having problems getting along with friends, family, neighbors, or authority figures. Tr. 179; *see also* Tr. 456 (Plaintiff "has a good relationship with all of her family,"). Plaintiff's treatment notes indicate that she "enjoys video night at the Library, as she interacts w/others about video games." Tr. 451. Plaintiff reported that her niece was visiting and they "are enjoying each other's company." *Id.* As previously noted, Plaintiff did volunteer work and established good rapport with her treatment providers. *See, e.g.*, Tr. 453, 456, 460. Although

there is evidence of communication difficulties in the record, *see e.g.*, Tr. 420 (Plaintiff "reports communication difficulties and individuals taking advantage of her,"), the ALJ's interpretation of the evidence is rational and the Court must defer to it. *Batson*, 359 F.3d at 1198.

On this record, the Court concludes that the ALJ gave a sufficient germane reason for assigning reduced weight to the opinion of Ms. Dinwiddie.

### IV. Lay Witness Testimony

Plaintiff asserts that the ALJ erred by rejecting the lay witness testimony of Plaintiff's sister, Cristy R. Lay witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting a lay witness's testimony must also be "specific." *Stout*, 454 F.3d at 1054 . When "the ALJ's error lies in a failure to properly discuss competent lay witness testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

Christy R. submitted a Third Party Function Report on June 25, 2014. Tr. 193-200. In her report, Christy R. stated that Plaintiff is child-like and has trouble with understanding and following directions, as well as trouble with cognition. Tr. 193. Plaintiff needs to be reminded to brush her teeth and clean her ears and, if she is taking a new medication, she needs reminders to take it. Tr. 195. Christy R. reported that Plaintiff has had her condition "all her life." Tr. 194. Christy R. reported that Plaintiff has difficulty expressing herself, is forgetful, and has trouble with concentration and complex instructions. Tr. 198. Plaintiff does not handle stress very well and

shows signs of anxiety. Tr. 199. Throughout the report, Christy R. gave a detailed description of Plaintiff's daily and weekly routine.

The ALJ gave Christy R.'s report "little weight." Tr. 20. "Although she has known the claimant since birth, she no longer lived near the claimant and only saw the claimant during the holidays. As such, her reports are necessarily based primarily on the reports of others rather than her own personal knowledge." *Id.* In addition, the ALJ noted that Christy R.'s description of Plaintiff's limitations and activities "is not indicative of an inability to sustain work activity." *Id.*

Plaintiff objects to the ALJ's characterization of Christy R.'s interactions with Plaintiff. Christy R. reported that she lives in Springfield and Plaintiff lives in Klamath Falls, but that they "spend as much time as possible together" during visits and that when they are together they go to the Saturday market, art shows, garage sales, and festivals together. Tr. 193. Christy R. noted that she will "visit [Plaintiff on] holiday & etc." *Id.* Although this is suggestive of more direct interaction than seeing one another only during holidays, the ALJ's conclusion that Christy R. sees Plaintiff infrequently is generally supported by Christy R.'s statement. The fact that Christy R. speaks to Plaintiff daily via Skype or by telephone, Tr. 197, does not undercut the ALJ's reasonable conclusion that her detailed account of Plaintiff's daily activities is derived from second-hand information. On this record, the Court concludes the ALJ gave a sufficiently germane reason to reject the Third-Party Function Report of Christy R.

V. **Remand**

In this case, the Court has determined that the ALJ's opinion contains non-harmless errors and so must determine whether remand should be for further proceedings or for award of benefits. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir.

2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In this case, the ALJ erred by failing to address the inadequacy of the record with respect to a possible diagnosis of autism spectrum disorder. As this is a situation in which the record is not fully developed, the proper remedy is remand for further proceedings. On remand, the ALJ shall provide an adequate consultative examination to thoroughly assess Plaintiff's mental impairments, including a possible diagnosis of autism spectrum disorder.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

DATED this 4th day of September, 2019.

ANN AIKEN
United States District Judge